08wf17980a-Ord(StrikeFuchs).wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RUBEN ARROYO** | : | Case No. 1:08-WF-17980 |
| Plaintiffs, | : | |
| v. | : | |
| **LINCOLN ELECTRIC CO., et al.,** | : | Judge Kathleen M. O'Malley |
| Defendants | : | |
| | : | **MEMORANDUM & ORDER** |

After the deadline for designation of experts had passed, plaintiff Ruben Arroyo designated Dr. Gerhard Fuchs as a materials design expert in this case, to offer opinions in support of Arroyo's claim for design defect. Defendants moved to strike the designation as untimely. On November 30, 2009, the Court conveyed to the parties its ruling on this motion via email. This Order memorializes and explains the ruling, which is that the motion is **GRANTED**, with the conditions and to the extent explained below.

\* \* \* \* \*

On July 20, 2009, the Court issued a Case Management Order ("CMO") setting various deadlines in this action; the parties had earlier negotiated and submitted the CMO as a proposed agreed Order. The CMO stated that the deadline for Arroyo's designation of expert witnesses was September 11, 2009. Arroyo did file a document on that date designating eight retained expert witnesses, but the document did

not list Dr. Fuchs nor any other expert on the subjects of metallurgy or material science. This omission suggested to defendants that Arroyo did not intend to pursue his design defect claim, especially since the Court had stated repeatedly in earlier MDL bellwether cases that a design defect claim cannot succeed absent expert testimony.[1]

Defendants were surprised, then, when, on October 28, 2009, Arroyo submitted an amended designation of expert witnesses, adding Dr. Fuchs. This designation came over 45 days after the agreed-upon deadline in the CMO. Because Arroyo had neither requested nor obtained (from either the defendants or the Court) an extension of time to make this late designation, defendants moved to strike Arroyo's late designation. Defendants also sought a protective order to relieve them from the obligation of responding to Arroyo's outstanding design defect discovery. This design defect discovery had earlier been a subject of contention: Arroyo had served the discovery on August 3, 2009; defendants responded on September 3, 2009, with various objections and no substantive responses; and on September 28, 2009, the Special Master overruled all objections and ordered defendants to provide substantive responses.[2]

The basis for defendants' motion to strike was simple – Arroyo missed the deadline to designate Dr. Fuchs by more than a month and a half, and did not even seek an extension of time before filing an

---

[1] *See, e.g., Tamraz v. Lincoln Elec. Co.*, 2007 WL 3399721 at *4-5 (N.D. Ohio Nov. 13, 2007) (granting summary judgment because "Tamraz does not offer any expert testimony, which is necessary to prove his design defect claim"). The Court had also earlier orally granted a motion for summary judgment on a design defect claim in the "*Duke Power*" case, for the same reason. *See Goforth* pretrial tr. at 120 (Oct. 25, 2006) ("There is no evidence that has been presented by way of expert testimony that would support that theory at this point, and so there is an insufficient record to allow that to go to the jury. So I'm going to grant summary judgment on that design defect claim in this case."); *In re Welding Fume Prods. Liab. Litig.*, 2006 WL 4511944 (N.D. Ohio Oct. 31, 2006) (memorializing this ruling). Indeed, the history of plaintiffs' actions in other cases in this MDL also suggested Arroyo might not pursue his design defect claim to trial, as other plaintiffs simply dropped the claim.

[2] The Special Master also ordered Arroyo to reduce his number of requests for admission. Arroyo served his amended discovery on November 2, 2009.

2

amended designation. Defendants insisted it would be unfair for the Court to simply relieve Arroyo of this failure. Without saying it explicitly, defendants also offered reminders that this Court has been strict in other MDL bellwether cases regarding timely submission of expert designations and reports, to the detriment of defendants. In the most recent MDL bellwether trial of *Cooley*, for example, plaintiffs argued strenuously that certain opinions offered by a number of defense experts in their trial depositions were untimely because the opinions were "new" and had not been included in the experts' formal, written reports. The Court agreed that certain of the defense experts' opinions had not been expressed in a timely-filed expert report, and granted plaintiffs' motion to exclude the opinions at trial. Citing *Cooley*, defendants suggested the Court should apply its timeliness rulings even-handedly and now exclude Dr. Fuchs as a witness in this case.

In response, Arroyo noted that: (1) he timely submitted discovery directed at his design defect claim; (2) after defendants objected and refused to provide substantive answers, he promptly sought Court intervention, and the Court ordered defendants to respond; and (3) the delay in obtaining this discovery precluded him from giving any meaningful information to Dr. Fuchs, or obtaining from him any meaningful opinions before the deadline for expert reports. Arroyo also noted that, when the Special Master ordered defendants to produce the design defect discovery, he wrote: "[defendants'] existing deadline to respond to [the] written discovery . . . [will] fall after the deadline for expert reports. Accordingly, counsel should please confer and determine appropriate deadline modifications. You may need to postpone or somehow phase the discovery and expert report deadlines related to design defect claims." Thus, Arroyo asserted his failure to timely designate Dr. Fuchs is properly attributed to defendants' initial failure to respond to discovery; further, the Special Master's ruling recognized the existing deadlines would have to be moved.

The problem with Arroyo's explanation is that the Special Master's September 28, 2009 ruling on the discovery dispute came *after* the September 11, 2009 deadline for expert designation. Indeed, the Special Master suggested the parties would have to negotiate "expert *report* deadlines related to design defect claims;" he did not suggest there had been any extension of time for the earlier deadline of expert *designation*, and he had no reason to believe this deadline was at issue (since it had passed, and no extension had been requested).

Ultimately, the Court concluded Arroyo's excuse for not timely designating a design defect expert was largely – but not completely – without merit. Defendants are correct that the pendency of the discovery dispute related to the design defect claim did not modify or postpone Arroyo's obligation to *designate* a design defect expert. This is true even if defendants' discovery delay might have given Arroyo reason to subsequently seek extensions of time for submitting Dr. Fuchs' expert report, pursuing additional follow-up discovery, and so on (which would certainly have led to a request for an extension of time by defendants for submission of a rebuttal expert report, if not also for defendants' expert designation).

That said, it is also true that defendants' initial refusal to answer the discovery was improper – lacking any substantial basis – and contributed to pushing beyond all existing deadlines any expert reporting and discovery that could have been undertaken on the design defect claim. Thus, even had Arroyo timely designated a design defect expert, there is little question but that all other related deadlines would have to have been continued.

In light of all these circumstances, the Court concluded as follows. While defendants' motion to strike Dr. Fuchs was generally well-taken, the Court found that simply granting the motion in light of defendants' initial discovery delay would act as too severe a sanction. Instead, the Court gave Arroyo three choices:

4

1. *Arroyo* would go forward on the existing trial date of March 15, 2010, but without any testimony from Dr. Fuchs;

2. Arroyo could dismiss his case with prejudice, and the backup case of *Street* would be tried on March 15, 2010; or

3. Arroyo could chose to postpone his trial until November of 2010; *Street* would be tried on March 15, 2010; and Arroyo would have to pay to defendants 1/3 of the case-specific trial preparation costs so far incurred by defendants in *Arroyo*, up to a maximum of $50,000.[3] The expert designation and discovery process would then be re-opened on the design defect claim, so the rescheduled *Arroyo* trial would go forward with testimony from Dr. Fuchs (assuming no other reason arose to exclude the testimony, such as a successful *Daubert* motion).

Arroyo has chosen option one. Accordingly, the motion to strike Dr. Fuchs is granted.

Finally, defendants joined their motion to strike Dr. Fuchs with a motion for protective order regarding Arroyo's outstanding design defect discovery. Defendants suggested that, since Arroyo cannot pursue his design defect claim without a design defect expert, the discovery requests are moot. The Court concluded, however, that the design defect discovery remained at least marginally relevant to Arroyo's claims, and – more importantly – remained relevant to other MDL plaintiffs who have stated design defect claims.[4] Accordingly, the Court denied the motion for protective order but also ruled that, to the extent defendants' discovery responses in *Arroyo* are generally applicable to all *Welding Fume* cases, the Court

---

[3] The 1/3 ratio was chosen because most of defendants' case-specific preparation would remain viable in the postponed trial. The $50,000 figure was chosen because it served as a reasonable outside limit on the sanction necessary to compensate defendants for allowing Arroyo to postpone his trial and pursue his design defect claim.

[4] Other bellwether plaintiffs have also stated claims for design defect, including plaintiff Jerkins, whose case is scheduled for trial in April of 2010.

will not require defendants to answer the same discovery requests again in future cases.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: January 4, 2010